UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DOMENICO BROCCOLI, ET AL.,

                Plaintiffs,

    v.

LANCE ASHWORTH, ET AL.,

                Defendants.

No. 21-CV-6931 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

Chiara Kalogjera-Sackellares, Esq.
Stephen J. Riccardulli, Esq.
Holland & Knight LLP
New York, NY
*Counsel for Plaintiffs*

Kieran Michael Lalor, Esq.
Lalor Law Firm
Hopewell Junction, NY
*Counsel for Plaintiffs*

Patrick F. Palladino, Esq.
Milber, Makris, Plousadis & Seiden, LLP
Woodbury, NY
*Counsel for Defendants Lance Ashworth, Mara Farrell, & William Sandy*

Anjali Bhat, Esq.
Charles F. Sanders, Esq.
NYS Office of the Attorney General
New York, NY
*Counsel for Defendant Douglas Mackey*

KENNETH M. KARAS, United States District Judge:

    Plaintiffs Domenico Broccoli ("Broccoli"), GLD3, LLC ("GLD3"), and Snook-9 Realty,

Inc. ("Snook-9", collectively "Plaintiffs") filed the instant Action against Lance Ashworth

("Ashworth"), Mara Farrell ("Farrell"), Douglas Mackey ("Mackey"), William Sandy ("Sandy"),

and Does 1-25 (collectively, "Defendants"), alleging one count of racketeering in violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), one count of a RICO conspiracy, 18 U.S.C. § 1962(d), as well as a state law claim for tortious interference with business relations. (*See* Third Am. Compl. ("TAC") (Dkt. No. 84).)

Before the Court are two Motions to Dismiss the TAC on the basis that Plaintiffs' claims are time-barred and/or fail to state a claim: one on behalf of Mackey, (*see* Not. of Mot. ("Mackey Not. of Mot.") (Dkt. No. 100)), and one on behalf of Ashworth, Farrell, and Sandy (collectively, the "Ashworth Defendants"), (*see* Not. of Mot. ("Ashworth Not. of Mot.") (Dkt. No. 106)). For the following reasons, both Motions are granted.

## I. Background

Because Plaintiffs' TAC alleges largely identical facts to his Second Amended Complaint ("SAC") and the factual and procedural background of this Action has been summarized in this Court's previous Opinion & Order on the Motions to Dismiss the SAC (the "2023 Opinion"), the Court assumes familiarity with the general issues in dispute. (*See* 2023 Opinion (Dkt. No. 78).)[1] The Court supplements the background only with the procedural history of this case since the issuance of the 2023 Opinion.

On March 28, 2023, this Court issued its Opinion and Order regarding the various Motions to Dismiss filed by Defendants, as well as parties no longer a part of this case, regarding Plaintiffs' SAC. *See Broccoli*, 2023 WL 2664770, at *21.[2] The Court granted all of the Motions

---

[1] This Opinion is published as *Broccoli v. Ashworth*, No. 21-CV-6931, 2023 WL 2664770 (S.D.N.Y. Mar. 28, 2023).

[2] Former Defendants Greenhouse Consultants Incorporated and Stephen Thomson were not named as Defendants in Plaintiffs' TAC, and therefore, have been terminated.

to Dismiss the SAC in their entirety but allowed Plaintiffs an opportunity to amend their Complaint. *Id.*

Following an extension, (*see* Dkt. No. 83), Plaintiffs timely filed their TAC on May 19, 2023, (*see* TAC). Thereafter, the Defendants filed pre-motion letters regarding their Motions to Dismiss the TAC, (*see* Dkt. Nos. 91, 95), to which Plaintiffs responded, (*see* Dkt. No. 96). After a pre-motion conference, (*see* Dkt. (min. entry dated July 20, 2023)), the Court set a briefing schedule for the Motions to Dismiss. On August 18, 2023, Defendant Mackey filed his moving papers. (*See* Mackey Not. of Mot.; Mackey Mem. of Law in Supp. of Mot. to Dismiss TAC ("Mackey Mem.") (Dkt. No 101); Decl. of Anjali Bhat in Supp. of Mot. to Dismiss TAC ("Bhat Decl.") (Dkt. No. 102).) On the same day, the Ashworth Defendants filed their papers. (*See* Dkt. No. 103.) On August 23, 2023, with permission from the Court, the Ashworth Defendants filed their amended Motion papers. (*See* Ashworth Not. of Mot.; Ashworth Mem. of Law in Supp. of Mot. to Dismiss TAC ("Ashworth Mem.") (Dkt. No 108); Decl. of Patrick F. Palladino in Supp. of Mot. to Dismiss TAC ("Palladino Decl.") (Dkt. No. 107).) Plaintiffs filed their opposition papers on September 19, 2023. (*See* Pls.' Mem. of Law in Opp. to Mot. to Dismiss TAC ("Pls.' Opp.") (Dkt. No 110).) On October 10, 2023, Defendant Mackey filed his reply papers. (*See* Reply Mackey Mem. of Law in Supp. of Mot. to Dismiss TAC ("Reply Mackey Mem.") (Dkt. No 116).) On the same day, the Ashworth Defendants also filed their reply papers. (See Reply Ashworth Mem. of Law in Supp. of Mot. to Dismiss TAC ("Reply Ashworth Mem.") (Dkt. No 115).)

II.  Discussion

A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at

678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Moreover, "[a] complaint may be dismissed as untimely when the plaintiff's allegations themselves demonstrate that relief is barred by the applicable statute of limitations." *Figueroa v. Ponce De Leon Fed. Bank*, No. 11-CV-7633, 2012 WL 3264552, at *1 (S.D.N.Y. Aug. 10, 2012) (citing *Jones v. Bock*, 549 U.S. 199, 214–15 (2007)); *see also Nachman v. Tesla, Inc.*, No. 22-CV-5976, 2023 WL 6385772, at *3 (E.D.N.Y. Sept. 30, 2023) ("Though the statute of limitations is an affirmative defense, a complaint may be dismissed for failure to state a claim if the allegations in the complaint show that relief is barred by the applicable statute of limitations. (internal quotation marks and citation omitted)). Moreover, "[w]here the facts needed for determination of when a reasonable person of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers integral to the complaint, resolution of the issue on a motion to dismiss is appropriate." *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 528 (S.D.N.Y. 2007) (alterations adopted) (quoting *LC Cap. Partners v. Frontier Ins. Grp.*, 318 F.3d 148, 156 (2d Cir. 2003)), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) (summary order); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998) (noting that the Second Circuit "[has] held that the question of inquiry notice need not be left to a finder of fact").

Finally, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's*

*Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B. Analysis

Plaintiffs' TAC, like the SAC, alleges that the Defendants violated, and conspired to violate, RICO, in violation of 18 U.S.C. §§ 1962(c) and 1962(d). (TAC ¶¶ 319–37.)[3] Plaintiffs also allege that all Defendants tortiously interfered with Plaintiffs' business relations. (*Id*. ¶¶ 338–50.) All Defendants move for dismissal of the TAC in its entirety. The Court addresses each argument to the extent necessary to decide the instant Motions.

1. Statute of Limitations

Defendants argue that Plaintiffs' RICO claims are time-barred, as Plaintiffs fail to assert a RICO injury within the relevant statute of limitations period. (*See* Mackey Mem. 10–12; Ashworth Mem. 6–11.) The Court agrees.

"The statute of limitations for a civil RICO claim is four years." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013); *see also Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1101 (2d Cir. 1988) (same). The limitations period begins to run "when the plaintiff discovers or

---

[3] As in the 2023 Opinion, *see Broccoli*, 2023 WL 266477, at *12 n.3, the Court notes an error in the numbering of Plaintiffs' paragraphs in the TAC. Specifically, after paragraph 324 (and again after the second paragraph 267), Plaintiffs appear to misnumber the following paragraphs as "248," and the paragraphs throughout the rest of the TAC mirror the new numbers. (*See generally* TAC.) Because of this, the TAC contains approximately twenty-six misnumbered paragraph numbers. To eliminate confusion, the Court presumes that this is a mistake and as such refers to the paragraphs as if Plaintiffs listed consistent numbering.

should have discovered the RICO injury." *Merrill Lynch*, 154 F.3d at 58; *Behrens v. JPMorgan Chase Bank N.A.*, No. 16-CV-5508, 2019 WL 1437019, at *4 (S.D.N.Y. Mar. 31, 2019) ("[D]iscovery of the injury, not discovery of the other elements of a claim, is what starts the clock." (quoting *Koch*, 699 F.3d at 148–49)). "Thus, the four-year statute of limitations is activated when [a] plaintiff is placed on 'inquiry notice' of the injury—that is, when [a] plaintiff has encountered 'sufficient "storm warnings" to trigger a duty to inquire.'" *Verschleiser v. Frydman*, No. 22-CV-7909, 2023 WL 5835031, at *5 (S.D.N.Y. Sept. 7, 2023) (alteration adopted) (quoting *Koch*, 699 F.3d at 153). "Such storm warnings need not detail every aspect of the alleged fraudulent scheme. Rather, such storm warnings are sufficient where, a person of ordinary intelligence would consider it probable that fraud had occurred." *Fire & Police Pension Ass'n of Colo. v. Bank of Montreal*, 368 F. Supp. 3d 681, 708 (S.D.N.Y. 2019) (alteration adopted) (quoting *Koch*, 699 F.3d at 151); *see also In re Merrill, Bofa, & Morgan Stanley Spoofing Litig.*, No. 19-CV-6002, 2021 WL 827190, at *6 (S.D.N.Y. Mar. 4, 2021) ("Inquiry notice gives rise to a duty of inquiry when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded." (alteration adopted) (internal quotation marks and citation omitted)), *aff'd sub nom. Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71 (2d Cir. 2022). "An objective standard applies to inquiry notice, and the Court may determine whether plaintiffs were on notice as a matter of law." *In re London Silver Fixing, Ltd., Antitrust Litig.*, 332 F. Supp. 3d 885, 913 (S.D.N.Y. 2018).

Moreover, the Second Circuit has adopted a "separate accrual rule," under which a "new claim accrues and the four-year limitation period begins anew each time a plaintiff discovers or should have discovered a new and independent injury." *Merrill Lynch*, 154 F.3d at 59 (internal

7

quotation marks omitted); *see also Simmons v. Reich*, No. 19-CV-3316, 2020 WL 7024345, at *9 (E.D.N.Y. Nov. 30, 2020) (same), *aff'd*, No. 20-4114, 2021 WL 5023354 (2d Cir. Oct. 29, 2021). However, "allegations of 'new and independent' injuries cannot depend on injuries that are derivative of the core injury sustained." *Tech. Opportunity Grp., Ltd. v. BCN Telecom, Inc.*, No. 16-CV-9576, 2019 WL 4688628, at *6 (S.D.N.Y. Sept. 25, 2019) (quoting *World Wrestling Ent., Inc.*, 530 F. Supp. 2d at 524).

Here, although Plaintiffs filed their initial Complaint concerning Defendants' alleged scheme on August 17, 2021, (*see* Dkt. No. 1), they make allegations regarding Defendants' acts in furtherance of the scheme dating at least as far back as 2006, (*see, e.g.*, TAC ¶ 31). Nevertheless, Plaintiffs contend that they "did not learn of many of the events alleged in the [C]omplaint until they obtained certain email communications from Ashworth, Farrell[,] and Sandy in 2018. Until Plaintiffs obtained these private communications, Plaintiffs could not have understood the scope of Defendants' fraudulent scheme, nor appreciated Defendants' coordination of effort, nor their use of mail and wire services in furtherance of their fraudulent scheme." (Pls.' Opp. 14.) Plaintiffs' argument is unavailing.

As noted, Plaintiffs' "discovery of the injury, not the discovery of the other elements of [their] claim, is what starts the [statute of limitations] clock." *Behrens*, 2019 WL 1437019, at *4 (internal quotation marks and citation omitted). As such, Plaintiffs' contention that they did not know the full scope of Defendants' scheme or other aspects of it prior to 2018, does not save its claim. Moreover, as explained above, Plaintiffs did not need to be aware of every aspect of Defendants' alleged fraudulent scheme in order to have inquiry notice of the injury. *See Verschleiser*, 2023 WL 5835031, at *5. Warnings that a fraud has probably occurred are sufficient. *See Fire & Police Pension Ass'n*, 368 F. Supp. 3d at 708.

The TAC reveals that Plaintiffs received "sufficient storm warnings," such that they discovered or should have discovered their RICO injury far before 2017. *Koch*, 699 F.3d at 153 (internal quotation marks omitted). Indeed, Plaintiffs own allegations demonstrate that (1) they were aware of many of the allegedly fraudulent acts that Defendants engaged in at the time of their occurrence; (2) there were publicly available articles that referenced Defendants' alleged scheme; and (3) Plaintiffs hired a private investigator to examine Defendants' activities.

With regard to the Defendants' allegedly fraudulent acts in furtherance of Plaintiffs' RICO injury, delay and obstruction of Plaintiffs' construction project, Plaintiffs were aware of such conduct at the time it occurred. For example, the TAC alleges that "Mackey, in 2006, overturned the Plaintiffs' 1999/2000 approvals from NYSHPO and abused his role within NYSHPO to extend the investigation, so as to increase Plaintiffs' costs and to delay and/or block Continental Commons." (TAC ¶ 31.) Plaintiffs contend that in 2009, Mackey forwarded a letter to Plaintiff Broccoli's former partner and "without justification or cause, . . . copied the Town of Fishkill Board members, . . . knowing that the letter contained the false statements regarding the [p]roperty's ties to the Revolutionary War and the Fishkill Supply Depot." (*Id.* ¶ 79.) Plaintiffs also allege that in 2012 "Mackey—who had previously stated that there was no evidence of graves on the north side of the property [at issue]—ordered, without justification, that an additional . . . investigation be conducted in the area that was manipulated by Defendants. Mackey ordered the knowingly false second investigation by telephone calls to Plaintiffs' consultants." (*Id.* ¶¶ 151–53.) In addition, Plaintiffs assert, with regard to the Ashworth Defendants, that on May 4, 2016, they were issuing allegedly false representations at a publicly televised meeting to the Town of Fishkill related to the property at issue. (*See id.* ¶ 234.) Moreover, Plaintiffs allege that they noted at a June 11, 2015 planning board meeting that

Defendant Ashworth was transmitting false and negative messages about Plaintiffs' project to former Defendant Thomson to repeat to the audience, which was a "strangle" and "bleed" tactic used to turn public opinion against Plaintiffs and delay the approval process of their project. (*See id.* ¶¶ 255, 257.)  Additionally, Plaintiffs admit to having their legal counsel send a letter on February 9, 2016, requesting former Defendant Thomson be recused from the project review by the planning board due to his association with the Friends of the Fishkill Supply Depot ("FOFSD").  (*See id.* ¶ 266).  Furthermore, Plaintiffs allege that in order "[t]o attack Plaintiffs' livelihood, Defendants organized a 'STOP IHOP' campaign in 2016 and 2017."  (*Id.* ¶ 289.)

The TAC also references publicly available articles that were published prior to 2017 and detail Defendants' alleged fraudulent actions that led to the supposed delay and obstruction of Plaintiffs' project.  For example, Plaintiffs contend that Defendants made false statements to various news organizations, which resulted in the New York Post, The Real Deal, and Inside Hook publishing articles in 2016 that generated negative publicity for Plaintiffs.  (*Id.* ¶¶ 299–301).  Plaintiffs claim that as a result of these articles, Plaintiff Broccoli had to spend a significant amount of time and money to mitigate the damage Defendants had caused.  (*Id.* ¶ 302.)

Finally, and perhaps most telling that Plaintiffs had discovered or should have discovered their RICO injuries prior to 2017 is the fact that Plaintiffs hired a private investigator in 2014 to investigate Defendants' actions.  (*Id.* ¶ 314.)  By Plaintiffs' own assertions, they admit that "[i]n and around November 2014," they "retained a private investigator . . . to help uncover Defendants' conduct."  (*Id.*)  The investigator "successfully attended FOFSD meetings and recorded statements confirming Defendants' altering of the [p]roperty [at issue] and confirming that they knew that the [p]roperty did not contain a Revolutionary cemetery."  (*Id.*; *see also id.*

¶¶ 252–53 (alleging that in April 2015 Thomson, Ashworth, and others participated in a "discussion of the preservation of the [p]roperty [at issue] and discussed tactics they might employ to stop development. These conversations were lawfully recorded by Plaintiffs' private investigator").) Such an allegation all but confirms that Plaintiffs were aware, at least since 2014, of Defendants' alleged conduct.

These incidents, all of which relate to the alleged RICO scheme to delay and obstruct Plaintiffs' construction project, (*see, e.g.*, *id.* ¶¶ 1, 32), demonstrate that there were a plethora of storm warnings going as far back as 2014 that Plaintiffs either discovered or should have discovered their supposed RICO injuries. In other words, the above circumstances are plainly sufficient to demonstrate that Plaintiffs were on inquiry notice of their asserted RICO injuries. Thus, the four-year RICO limitations period began at least since 2014, if not earlier, meaning that the time to bring the RICO claims expired at the latest in 2018—long before this litigation was commenced in August 2021. *See Koch*, 699 F.3d at 153 ("The RICO statute of limitations . . . runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry." (quoting *World Wrestling Ent., Inc.*, 328 F. App'x at 697).

To the extent Plaintiffs argue that they have brought allegations concerning Defendants' fraudulent acts in furtherance of their scheme that were committed in 2017 or later, (*see* Pls.' Opp. 15–16), such allegations do not cure the statute of limitations issues. All of Plaintiffs' allegations, including those regarding Defendants' alleged acts in 2017 and onward, relate to the same core RICO injury—that is "stopping or delaying Plaintiffs' commercial development." (TAC ¶¶ 1, 32.) Accordingly, any contentions regarding Defendants' conduct as to the alleged scheme in 2017 or after is simply "derivative of the core injury sustained," and therefore, is not a

11

"new and independent injury" that would restart the limitations period. *Tech. Opportunity Grp., Ltd.*, 2019 WL 4688628, at *6 (internal quotation marks and citation omitted); *see also Merrill Lynch*, 154 F.3d at 59–60 (concluding that the defendants' "later communications which put a gloss on the losing investments were continuing efforts to conceal the initial fraud, and not separate and distinct fraudulent acts resulting in new and independent injuries"); *Wang v. Yien-Koo King*, No. 18-CV-8948, 2019 WL 1763230, at *6 (S.D.N.Y. Apr. 22, 2019) (holding that the "[p]laintiffs cannot use independent, new predicate acts as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." (alterations adopted) (internal quotation marks and citation omitted)); *Lorber v. Winston*, 962 F. Supp. 2d 419, 447–48 (E.D.N.Y. 2013) (holding that the separate accrual rule did not apply because the complaint alleged "one singular scheme . . . which was fraudulent at the outset" and the plaintiff's allegations of new and independent injuries "simply followed from the execution of that scheme").

As far as Plaintiffs' argument that the statute of limitations was tolled due to Defendants' fraudulent concealment of the alleged scheme, (*see* Pls.' Opp. 14–15), such an argument does not fare any better. "The Second Circuit has held that the 'standard tolling exceptions apply' to civil RICO actions." *In re Merrill Lynch Ltd. P'ships Litig.*, 7 F. Supp. 2d 256, 274 (S.D.N.Y. 1997) (quoting *Bankers Tr.*, 859 F.2d at 1105), *aff'd*, 154 F.3d 56. Under the doctrine of fraudulent concealment, the statute of limitations will be tolled if the plaintiff proves three elements: "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530,

543 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Scalercio-Isenberg v. Goldman Sachs Mortg. Co.*, No. 21-CV-4124, 2022 WL 3227875, at *15 (S.D.N.Y. Aug. 9, 2022) (same). "The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000); *see also Mcpherson v. DeJoy*, No. 19-CV-7139, 2021 WL 4813164, at *5 (E.D.N.Y. Aug. 3, 2021) (same), *report and recommendation adopted*, 2021 WL 4260643 (E.D.N.Y. Sept. 20, 2021). Further, a "[p]laintiff must plead each of these elements with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure." *Nat'l Grp. for Commc'ns & Computs. Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 265 (S.D.N.Y. 2006); *see also Rio Tinto PLC v. Vale*, No. 14-CV-3042, 2015 WL 7769534, at *8 (S.D.N.Y. Nov. 20, 2015) ("A plaintiff attempting to apply fraudulent concealment must plead each of [its] elements with particularity as required by Rule 9(b)." (internal citation omitted)). "Thus, 'even when a plaintiff pleads active concealment by the defendant, the plaintiff must still demonstrate that he exercised due diligence in trying to discover the fraud.'" *World Wrestling Ent., Inc.*, 530 F. Supp. 2d at 529 (quoting *Merrill Lynch*, 7 F. Supp. 2d at 274). "Or, as the Supreme Court has succinctly warned, 'a plaintiff who is not reasonably diligent may not assert "fraudulent concealment."'" *Id.* (quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194 (1997)).

      Even assuming Plaintiffs have adequately pled fraudulent concealment that prevented them from discovering Defendants' alleged scheme within the limitations period, which is uncertain at best, they have not pled that they exercised due diligence in pursuing the discovery of the claim. Plaintiffs fail to provide any allegations, let alone particularized allegations, regarding their due diligence to discover the nature of their claims. In fact, even after Plaintiffs hired a private investigator in 2014 to investigate Defendants' actions, (*see* TAC ¶ 314),

13

Plaintiffs do not allege that they followed up with any action to discover or pursue their claims until years later when the limitations period had passed, (*see generally id.*).  Moreover, Plaintiffs do not provide any explanation as to why they are entitled to equitable tolling based on fraudulent concealment.  (*See* Pls.' Opp 14–15.)  Rather, Plaintiffs merely claim, in a conclusory fashion, that they "have sufficiently alleged the elements of the claim for equitable tolling."  (*Id.*)  Such a conclusory statement is insufficient, especially where a claim for fraudulent concealment requires particularized allegations.  *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 462 (S.D.N.Y.) ("Allegations of fraudulent concealment are subject to the particular pleading requirements set forth in [Rule] 9(b)."), *aff'd*, 838 F. App'x 582 (2d Cir. 2020) (summary order); *see also Phhhoto Inc. v. Meta Platforms, Inc.*, No. 21-CV-6159, 2023 WL 2710177, at *20 (E.D.N.Y. Mar. 30, 2023) ("Courts in this Circuit have found that 'general assertions' of 'due diligence without more specific explanation will not satisfy the pleading requirements.'" (alterations adopted) (citations omitted)).  Therefore, the Court concludes that Plaintiffs have failed to adequately plead tolling based on fraudulent concealment.  *See Phhhoto Inc*, 2023 WL 2710177, at *21 (concluding that "[plaintiff]'s own timeline of events undermines any argument that [plaintiff] acted with reasonable diligence in investigating [defendant]'s alleged wrongdoing, . . . and [thus, plaintiff] is not entitled to toll the statute of limitations based on the fraudulent concealment tolling doctrine"); *see also Koch*, 699 F.3d at 157 (holding that the district court did not abuse its discretion in declining to equitably toll, on a fraudulent concealment theory, the statute of limitations, where, inter alia, plaintiff did not act with reasonable diligence to pursue discovery of his claims after he was put on notice of a potential fraud); *Zhongwei Zhou v. Wu*, No. 14-CV-1775, 2017 WL 1233994, at *6 (S.D.N.Y. Mar. 31, 2017) ("In short, [p]laintiffs waited years before bringing this case.  The record reflects that they failed to exercise reasonable

diligence in pursuing the facts and investigating their suspicions while their claims were still timely[.]").

. . .

Accordingly, because Plaintiffs fail to allege a RICO injury within the appropriate statute of limitations period, their RICO claims are time-barred, and therefore dismissed.[4]

2. State Law Claims

Finally, Plaintiff raises a single claim under state law: tortious interference with business relations. (*See* TAC ¶¶ 338–350.) In light of the Court's dismissal of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over the state law claim. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction . . . ."). As the Court explained in its previous opinion, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Broccoli*, 2023 WL 2664770, at *20 (alteration omitted) (quoting *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs.*

---

[4] To be sure, in finding that Plaintiffs' RICO claims are time-barred, and therefore dismissed, the Court is dismissing, in addition to Plaintiffs' Section 1962(c) claim, Plaintiff's Section 1962(d) RICO conspiracy claim. "Like the statute of limitations under the other civil RICO provisions, the statute of limitations for civil RICO conspiracy claims is four years." *World Wrestling Ent., Inc.*, 530 F. Supp. 2d at 530 (quoting *Bendzak v. Midland Nat'l Life Ins. Co.*, 440 F. Supp. 2d 970, 983 (S.D. Iowa 2006)). "Moreover, the statute of limitations analysis for civil RICO conspiracy claims is the same as that for civil RICO claims brought under the substantive RICO provision." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Accordingly, the Court's above statute of limitations analysis applies to Plaintiffs' Section 1962(d) claim with equal force and because the Court had already found that Plaintiffs' action started to run no later than 2014, over seven years before the lawsuit was initiated, Plaintiff's RICO conspiracy claim is also dismissed.

*Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013)); *see also Paparella v. Liddle & Robinson, L.L.P.*, No. 18-CV-9267, 2023 WL 2344725, at *7 (S.D.N.Y. Mar. 3, 2023) (same); *Barua v. Barua*, No. 14-CV-5107, 2016 WL 3659899, at *3 (E.D.N.Y. June 30, 2016) (similar).

### III. Conclusion

For the foregoing reasons, both Motions to Dismiss are granted. Because this is the first adjudication of Plaintiffs' claims on statute of limitations grounds, Plaintiffs' claims are dismissed without prejudice. If Plaintiffs wish to file a fourth amended complaint alleging additional facts and otherwise addressing the deficiencies the Court has identified, Plaintiffs must do so within thirty days of the date of this Order. The fourth amended complaint will replace, not supplement, the previous complaints. The failure to timely file an amended complaint may result in the dismissal of this Action with prejudice. The Clerk of Court is respectfully directed to terminate the pending Motions. (*See* Dkt. Nos. 100, 106.)

SO ORDERED.

Dated:   March 20, 2024
         White Plains, New York

                                              KENNETH M. KARAS
                                              United States District Judge