UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOMENICO BROCCOLI, ET AL.,

        Plaintiffs,

  v.

LANCE ASHWORTH, ET AL.,

        Defendants.

No. 21-CV-6931 (KMK)

OPINION & ORDER

Appearances:

Chiara Kalogjera-Sackellares, Esq.
Stephen J. Riccardulli, Esq.
Holland & Knight LLP
New York, NY
*Counsel for Plaintiffs*

Kieran M. Lalor, Esq.
Lalor Law Firm
Hopewell Junction, NY
*Counsel for Plaintiffs*

Patrick F. Palladino, Esq.
Milber, Makris, Plousadis & Seiden, LLP
Woodbury, NY
*Counsel for Defendants Lance Ashworth,*
*Mara Farrell, & William Sandy*

KENNETH M. KARAS, United States District Judge:

  Plaintiffs Domenico Broccoli ("Broccoli"), GLD3, LLC ("GLD3"), and Snook-9 Realty,

Inc. ("Snook-9") (collectively "Plaintiffs") filed the instant Action against Lance Ashworth

("Ashworth"), Mara Farrell ("Farrell"), William Sandy ("Sandy"), and Does 1-25 (collectively,

"Defendants"), alleging one count of racketeering in violation of the Racketeer Influence and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and one count of a RICO conspiracy, 18 U.S.C. § 1962(d).  (*See* Fourth Am. Compl. ("FAC") (Dkt. No. 121).)

Before the Court is Defendants' Motion to Dismiss the FAC (the "Motion"), pursuant to Federal Rule of Civil Procedure 12(b)(6), on the basis that Plaintiffs' claims are time-barred and, alternatively, that Plaintiffs fail to state a claim.  (*See* Not. of Mot. (Dkt. No. 128).)  For the following reasons, the Motion is granted.

I.  Background

A.  Materials Considered

As a threshold matter, the Court determines whether it can consider, as Defendants urge it to, allegations made in Plaintiffs' earlier Complaints but omitted in the current version.  (*See* Defs' Mem. of Law in Supp. of Mot. to Dismiss FAC 17–22 ("Defs' Mem.") (Dkt. No. 129).)  In particular, Defendants note that Plaintiffs have omitted several dates in the FAC that were dispositive to the Court's previous Opinion & Order on the Motions to Dismiss the Third Amended Complaint, (the "TAC" and "2024 Opinion" (Dkt. No. 119),[1] respectively), on statute of limitations grounds, in what Defendants characterize a "deliberate[] attempt to mislead [the] Court," (*see* Defs.' Mem. 17–25).

With respect to the allegations made in Plaintiffs' earlier pleadings, Defendants are correct that "[w]here a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." *Vasquez v. Reilly*, No. 15-CV-9528, 2017 WL 946306, at *3 (S.D.N.Y. Mar. 9, 2017) (quoting

---

[1] This Opinion was published as *Broccoli v. Ashworth ("Broccoli II")*, No. 21-CV-6931, 2024 WL 1199549 (S.D.N.Y. Mar. 20, 2024).

*Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-400, 2008 WL 4386764, at *6 (S.D.N.Y.

Sept. 24, 2008) (alterations and internal quotation marks omitted); *see also Dozier v. Deutsche*

*Bank Trust Co. Ams.*, No. 09-CV-9865, 2011 WL 4058100, at *2 (S.D.N.Y. Sept. 1, 2011)

("[T]he court need not accept as true allegations that conflict with a plaintiff's prior

allegations.").  "Where, however, an amended pleading is not in 'direct' contradiction with the

original pleading, courts apply the general rule recognizing that an amended pleading completely

replaces the original pleading."  *Brooks v. 1st Precinct Police Dep't*, No. 11-CV-6070, 2014 WL

1875037, at *3 (E.D.N.Y. May 9, 2014); *see also Bernadotte v. N.Y. Hosp. Med. Ctr. of Queens*,

No. 13-CV-965, 2014 WL 808013, at *6 (E.D.N.Y. Feb. 28, 2014) ("Taken as a whole, while not

congruous, [the] [p]laintiff's allegations are not in such direct contradiction that the [c]ourt is

moved to abandon the usual deference afforded to an [a]mended [c]omplaint and therefore

accepts all factual allegations in the complaint as true, and draws all reasonable inferences in the

[p]laintiff's favor." (alterations and internal quotation marks omitted)).  Thus, "[w]hile courts are

free to deny leave to amend a complaint if the *proposed* amended complaint attempts to omit

certain previously-alleged facts without adequate explanation or in bad faith, once an amended

pleading is filed, a court may not import information that was contained in the prior pleading but

omitted from the amended pleading."  *Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*,

No. 08-CV-588, 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012) (emphasis added) (citations

omitted); *see also Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 32 (2d Cir. 2002) ("A

statement in a withdrawn complaint that is superseded by an amended complaint without the

statement is no longer a conclusive judicial admission."), *overruled on other grounds by Slayton*

*v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006).

Here, although Defendants correctly point out that Plaintiffs omit many dates and allegations contained in their prior pleadings—many of which the Court relied on in concluding Plaintiffs' claims were time-barred—Defendants have not identified any statements in the FAC that *directly contradict* the earlier pleadings. Although Plaintiffs' "omissions . . . suggest gamesmanship at its worst," *Phillips v. City of Middletown*, No. 17-CV-5307, 2018 WL 4572971, at *4 n.4 (S.D.N.Y. Sept. 24, 2018), the mere fact that Plaintiffs chose to omit, for strategic reasons, facts alleged in their earlier pleadings does not entitle this Court to consider those facts once it has accepted the amended pleading for filing, *see, e.g., Brooks*, 2014 WL 1875037, at *3 ("[The] [p]laintiff's [a]mended [c]omplaint omits a fact that was included in his original [c]omplaint, but does not 'directly contradict' any factual allegations made in the original [c]omplaint. The [c]ourt therefore finds that the [a]mended [c]omplaint replaces the original complaint. . . ."); *see also Xie v. JPMorgan Chase Short-Term Disability Plan*, No. 15-CV-4546, 2016 WL 3963113, at *3 (S.D.N.Y. July 20, 2016) (noting that "[a]lthough the change in the [c]omplaint . . . raises doubt, at the motion to dismiss stage the truthfulness of the allegations is assumed, and any attempt to use [p]laintiff's prior pleadings against her as an admission is premature").[2]  The Court therefore takes the allegations in the Fourth Amended Complaint as true, and does not consider the facts alleged in earlier iterations of the Complaint.[3]

_____

[2] Defendants' authority does not change the outcome.  The cases Defendants cite focus on whether a court should accept a proposed amended complaint that omits allegations from a former version—not whether a court must take as true the allegations in an *accepted* amended complaint—and is thus inapposite.  (*See* Defs' Mem. 18 (citing *Am. Tissue, Inc. v. DLJ Merchant Banking Partners, II, L.P.*, No. 03-CV-6913, 2006 WL 1084392, at *5 (S.D.N.Y. Apr. 20, 2006), and *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 233 F.R.D. 327, 330 (S.D.N.Y. 2005)).)

[3] The Court reminds Plaintiffs' counsel, however, that if they are "indeed omitting a key piece of undisputed factual information in order to avoid dismissal, [they] and [their] client run

However, the Court notes that although its review on a motion to dismiss is generally "confined to the pleading themselves," it may consider "matters of which judicial notice may be taken." *Markatos v. Citibank, N.A.*, --- F. Supp. 3d ----, 2024 WL 5154487, at *1 (S.D.N.Y. Dec. 18, 2024) (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)); *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . ., documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (quotation marks omitted)).  "Judicial notice may be taken of documents that are 'integral to the complaint' such that the complaint 'relies heavily upon [the documents'] terms and effect.'"  *Hesse v. Godiva Chocolatier, Inc.,* 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019)); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (same).  Moreover, "[c]ourts have also taken judicial notice of materials in the public record, such as federal copyright registrations, newspaper articles, and regulatory filings—all for the limited purpose of noting what the documents state, rather than to prove the truth of their contents."  *Hesse*, 463 F. Supp. 3d at 462 (internal quotation marks omitted).

As relevant here, the Court may take judicial notice of various websites and articles published therein, press releases, and prior lawsuits referenced in the FAC—as well as the

---

the risk of being sanctioned for vexatiously multiplying the litigation."  *Phillips*, 2018 WL 4572971, at *4 n.4; *see id.* at *4 n.3 (noting that, "[w]hile the admissions in the original Complaint may no longer be conclusive judicial admissions, they are nevertheless admissible statements of a party under Federal Rule of Evidence 801(d)(2) and will present a problem for [p]laintiff should the case get to a jury"); *see also Kilkenny*, 2012 WL 1638326, at *5 (reminding the plaintiff that all parties "have an obligation to act honestly and in good faith when conducting business before the courts, and if they do not, they risk the imposition of sanctions," and noting the plaintiff "someday will have to substantiate the claims in his Amended Complaint (and answer for those made in his original Complaint)").

relevant dates associated with those items—because neither Party "dispute[s] the[ir] authenticity

. . . and they are capable of accurate and ready determination." *Markatos*, 2024 WL 5154487, at

*2 (alterations adopted) (internal quotation marks omitted) (quoting *O'Neill v. Standard*

*Homeopathic Co.*, 346 F. Supp. 3d 511, 519 n.2 (S.D.N.Y. 2018)); *see also Hesse*, 463 F. Supp.

3d at 463 (taking "judicial notice of information publicly announced on a party's website"); *In re*

*AppHarvest Sec. Litig.*, 684 F. Supp. 3d 201, 239–40 (S.D.N.Y. 2023) (taking judicial notice of

press releases); *Velez v. N.Y.C. Police Pension Fund Art. II*, No. 18-CV-1366, 2019 WL

1382884, at *9 n.11 (S.D.N.Y. Mar. 27, 2019) (same); *Caldrello v. Wells Fargo Bank, N.A.*,

No. 24-CV-268, 2024 WL 4416593, at *2 (D. Conn. Oct. 4, 2024) (taking judicial notice of

"docket sheets" and "decisions and submissions filed in prior lawsuits"), *appeal pending*,

No. 24-2743, 2024 WL 4416593 (2d Cir. Oct. 17, 2024); *Sbarra v. Port Auth. of New York &*

*New Jersey*, No. 10-CV-8580, 2011 WL 4344078, at *9 (S.D.N.Y. Sept. 9, 2011) (taking judicial

notice of "publicly-available matters relating to [a] prior . . . lawsuit" (citing *Kramer v. Time*

*Warner, Inc*, 937 F.2d 767, 774 (2d Cir. 1991))); *Magnoni v. Smith & Laquercia, LLP*, 701 F.

Supp. 2d 497, 501 (S.D.N.Y. 2010) (citation and quotation marks omitted) (noting "[i]t is

generally proper to take judicial notice of articles and [websites] published on the [i]nternet").

The Court will only consider these websites, articles, press releases, and prior lawsuits "for the

fact that they exist, not the truth of the matters asserted therein." *Doe v. County of Rockland*,

No. 21-CV-6751, 2023 WL 6199735, at *2 (S.D.N.Y. Sept. 22, 2023); *see also Ferranti v.*

*Arshack, Hajek & Lehrman PLLC*, No. 20-CV-2476, 2021 WL 1143290, at *3 (S.D.N.Y. Mar.

24, 2021) ("The [c]ourt may take judicial notice of a document filed before another court and

may consider such documents for the fact that they exist, but not for the truth of the matters

asserted therein." (citing *Roth*, 489 F.3d at 509)), *appeal withdrawn*, No. 21-1245, 2021 WL

6

3575023 (2d Cir. June 23, 2021); *Hutchins v. Solomon*, No. 16-CV-10029, 2018 WL 4757970, at *7 (S.D.N.Y. Sept. 29, 2018) (taking judicial notice of filings in a court case submitted by a party "only to establish the fact of such filings and what they contained, not for the truth of the matter asserted therein" (citation omitted)).

### B. Factual Background

The following facts are drawn from Plaintiffs' FAC, the exhibit attached therein, and from matters of which the Court may take judicial notice and are taken as true for the purposes of resolving the instant Motion.[4] *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

#### 1. The Parties

This Action involves numerous parties with various roles in the unlawful scheme alleged by Plaintiffs. For clarity, the Court provides a summary of the Parties and their respective roles in the alleged scheme.

Plaintiff Broccoli is a graduate of the Culinary Institute of America and a "lifelong restauranteur" who currently owns and operates four IHOP franchises, among other ventures. (FAC ¶ 26.) As relevant to the instant Action, Broccoli is a principal at corporate Plaintiffs GLD3 and Snook-9, who together own the property at issue in this litigation. (*Id.* ¶¶ 27–28.)

---

[4] Plaintiffs' FAC, while lengthy, is hardly a model of clarity, particularly with respect to the exact timeline of the misconduct Plaintiffs allege. Making matters worse, Plaintiffs often refer to Defendants no longer named in this Action as if they were current Defendants, (*e.g.*, FAC ¶¶ 154, 187), introduce acronyms without explaining what those acronyms stand for (*e.g.*, *id.* ¶¶ 99, 111), and, to cap it off, confuse "Plaintiffs" with "Defendants," (*id.* ¶ 165 "Plaintiffs often spoke at public fundraising events, during which[] they intentionally distorted the historic and archeologic record"); *id.* ¶ 182 ("Based on th[is] false claim . . . Plaintiffs applied for the grant using the United States mail and electronic mail services.").) Nevertheless, the Court has closely reviewed the FAC and matters of which it may take judicial notice in an attempt to provide as cohesive of a narrative as possible.

GLD3 is a New York limited liability company that owns a parcel of real property slated to be developed as Continental Commons ("the Property" or "Continental Commons").  (*Id*. ¶ 27.) Snook-9 is a New York corporation that also owns a parcel of property that will be developed alongside GLD3's property to create Continental Commons.  (*Id*. ¶ 28.)  Broccoli has been a principal at GLD3 and Snook-9 throughout the ownership of the Property since 1986.  (*Id*. ¶ 26.)

Defendants Ashworth, Sandy, and Farrell—who are intermittently categorized by Plaintiffs as the "RICO Defendants" (*e.g.*, ¶ 250)—are "officers, members[,] and supporters" of the non-profit organization the Friends of the Fishkill Supply Depot ("FOFSD"), which has the stated purpose of, inter alia, "permanent protection of the Continental Army Burial Complex within the boundaries of the Fishkill Supply Depot," (*id*. ¶ 19).  Ashworth, the President of FOFSD, who is also a Special Agent with the Federal Bureau of Investigation ("FBI") in Dutchess County, leads FOFSD's "fundraising operations[] and makes all strategic decisions for the organization."  (*Id*. ¶ 29.)  Sandy is a "registered professional archaeologist," the "resident archaeologist" for FOFSD, and a member of FOFSD's Board.  (*Id*. ¶ 30.)  Farrell, a co-founder of FOFSD, works as a public relations executive and "was responsible for implementing the public relations portion of the fraudulent scheme" described below.  (*Id*. ¶ 31.)[5]

2.  The Property

Plaintiffs GLD3 and Snook own a 10.4-acre parcel of land in Fishkill, New York, located on a commercially developed area of local Route 9.  (*Id*. ¶ 37.)  "Like much of the land in

---

[5] The FAC's caption also names as Defendants "Does 1-25," although the FAC only references potential Doe Defendants on three occasions.  (*See id.* ¶¶ 17 n.1, 86, 127.)  The FAC also contains intermittent allegations about Douglas Mackey, who was previously listed as a Defendant in the Action but was not named as such in the FAC.  The FAC does not define Mackey's role or clarify whether he is also a member of FOFSD or of a separate organization. (*See id.* ¶¶ 154, 157–58.)

Fishkill and neighboring towns, the Property falls within . . . the 'Fishkill Supply Depot,'" which

is an area near the Town of Fishkill first coined by archaeologists in the 1970s.  (*Id*. ¶¶ 43, 45.)

At times, the Fishkill Supply Depot "has been used to refer to the overall historic depot used

during the Revolutionary War," which "consisted of a wide range of diverse and distinct

facilities that were not located on contiguous properties" in portions of Village of Fishkill, East

Fishkill, Snow Valley, and Fishkill Landing (now referred to as the City of Beacon).  (*Id*. ¶ 45.)

"The Property also falls within the 74-acre National Register of Historic Places tract[,]" and the

"Fishkill Supply Depot" term has also been used to refer to the National Register property

known as the "Fishkill Supply Depot National Register Site[,]" which itself is a "small portion of

the greater Fishkill Supply Depot."  (*Id*. ¶¶ 44, 46–47.)  Of note, most of the Village of Fishkill

land (which encompasses both the National Register of Historic Places and Fishkill Supply

Depot) has been "extensively developed . . . including a recently built Home Depot, a

McDonalds, hotels, two banks," properties belonging to Plaintiffs, and other commercial

enterprises.  (*Id*. ¶ 44.)

The Property at issue in the instant Action was purchased around 1986 by Touchdown

Development Corporation ("Touchdown"), a "predecessor company" to GLD3 and Snook-9.

(*Id*. ¶ 38.)  In and around the 1990s, "Touchdown built a gas station and convenience store on

one and a quarter acre[s] of land on the northwest portion of the Property."  (*Id*.)  As required,

Touchdown received approvals from the Town of Fishkill and the New York State Historic

Preservation Office ("NYSHPO") in about two years prior to developing this land.  (*Id*.)  In and

around 2000, "Plaintiffs sought approval to build a hotel on the northeast portion of the

Property[,]" which also went under review by NYSPHO.  (*Id*. ¶ 39.)  The review was completed

and approved in less than a year, however, Plaintiffs decided not to move forward with the hotel development at that time. (*Id.*)

"In or around 2015, Plaintiffs began to develop their plan for Continental Commons on the remaining 10 plus acres of land." (*Id.* ¶ 40.) Plaintiffs intend Continental Commons to "operate as a commercial, social[,] and educational center with a restaurant, shops[,] and an inn," (*id*. ¶ 1), and will also "incorporate features that will allow visitors to enjoy an interactive and immersive historical experience" by integrating "plaques and architectural elements from historically significant buildings in Dutchess County during the time of the American Revolutionary War," (*id*. ¶ 41). Continental Commons will also include a "Dutchess County Visitor's Center" to teach visitors about "the rich history of the Town of Fishkill and its relationship to the American Revolution." (*Id*. ¶ 42.)

While developing the Continental Commons proposal, Plaintiffs were "required to conduct archaeological research on the Property[.]" (*Id*. ¶ 49.) Although the proposal development allegedly did not begin until 2015, (*id.* ¶ 40), around October and November 2007, NYSHPO supervised an investigation using ground-penetrating radar ("GPR") that "identified seven suspected grave shafts located in the southwest corner of the Property[,]" as well as one confirmed human burial, (*id*. ¶¶ 50, 111). Additional GPR studies were conducted the following year. (*Id.* ¶ 99.) In 2011, NYSHPO "told Plaintiffs' consultants to look for burials in the northern part of the Property—*i.e.*, the area of the Property to be developed." (*Id.* ¶ 53.) This investigation resulted in a finding that "[n]o graves or significant archaeological features were identified in the northern portion of the Property." (*Id*. (internal quotation marks removed).) However, in 2012, a GPR survey "detected sixteen anomalies that resembled the shape and depth of . . . burial features," three of which were excavated. (*Id.* ¶¶ 149–50.) In 2013, yet additional

testing was performed, "delineat[ing] the northern and easternmost boundaries of the burial area." (*Id*. ¶ 51.)[6] "In all, the burial area comprises 0.4 acres in the southwest corner of the Property." (*Id*.)

"Despite any historical or archaeological evidence linking the Property and/or the burial area to the Revolutionary War," (*id*. ¶ 72), Plaintiffs' development plan "designates and memorializes the burial area in the southwest corner of the Property as a burial ground" so that Plaintiffs cannot build in that area; instead, Plaintiffs' plan is to provide public access to the burial area and install "appropriate signage and educational information to honor those who lost their lives fighting for independence," (*id*. ¶ 54).

In 2013, Ashworth approached Plaintiffs about FOFSD acquiring the Property. (*Id*. ¶ 75.) Broccoli offered to sell the Property in May 2013 on the condition that the sale be completed by the end of the year. (*Id*. ¶ 77.) "Recognizing that FOFSD was unlikely to be able to raise the funds required to purchase the entire" Property, Broccoli offered to donate the 0.4-acre burial area, along with two additional acres. (*Id*. ¶ 78.) In December 2013, Ashworth informed Broccoli that they did not have the ability to purchase the Property, but declined Broccoli's offer to donate a limited portion of the acreage, stating "we want the entire 10 acres." (*Id*. ¶¶ 79–80.) After failing to purchase the Property, Defendants launched their allegedly fraudulent scheme. (*Id*. ¶ 81.)

### 3. Defendants' Alleged Fraudulent Scheme

Plaintiffs allege that Defendants—"act[ing] in concert"—participated in a fraudulent scheme to "devalue Plaintiffs' [P]roperty . . . and destroy Plaintiffs' business interests" in order

---

[6] By 2013, more than thirteen archeological investigations were completed on the Property. (*Id*. ¶ 153.)

to "acquire the [P]roperty for pennies on the dollar" and create their own "for-profit business in which they will conduct 'cultural heritage tours.'"  (*Id.* ¶¶ 1, 2, 24.)  Specifically, Plaintiffs allege that Defendants, led by Ashworth, engaged in a "multi-layered web of information laundering . . . and making knowingly false statements to federal, state and local governmental entities," which allegedly resulted in "a [five] year delay of Plaintiffs' development project[,] millions of dollars of damages to Plaintiffs," the "[P]roperty being designated as a Revolutionary War Soldier's Cemetery by the Town of Fishkill" in May of 2023, and the temporary denial of Plaintiffs' petitions to grant water and sewer extensions to the Property.  (*Id.* ¶¶ 3–4, 124 n.2, 212.)

As relevant to the instant Action, Plaintiffs allege various specific acts performed in furtherance of the alleged scheme.  First, Defendants repeatedly and falsely characterized the Property as "untouched" in order "to distort the archaeological and historical record."  (*Id.* ¶¶ 89–90.)  Relatedly, Defendants repeatedly claimed that the Property "holds the largest Revolutionary soldiers' cemetery in the country," "[d]espite knowing that the human remains" discovered on the Property "have not been dated and/or linked to the Revolutionary War," in order to "intentionally devalue and delay [Plaintiffs'] development of the Property."  (*Id.* ¶ 94.)  Defendants made these and similar claims during fundraising and other events, (*id.* ¶¶ 96, 166–177), on social media, (¶¶ 119–20), in press releases and news articles (some from as early as 2013), (*id.* ¶¶ 102, 221–24; Lance Ashworth, *Nine Additional Soldiers Identified at Endangered Revolutionary War Cemetery* ("2013 Press Release"), Friends of the Fishkill Supply Depot (Mar. 16, 2013), https://www.fishkillsupplydepot.org/press/pr2.pdf [perma.cc/JD6T-BVMS]; FAC Ex. A at 5–8), and in a 2016 petition circulated on Change.org, (FAC ¶¶ 121–26; *Don't turn a famous Revolutionary War site into an IHOP restaurant* ("2016 Petition"),

Change.org (created Dec. 18, 2016), https://www.change.org/p/don-t-turn-a-famous-revolutionary-war-site-into-an-ihop-restaurant [perma.cc/GV4Q-SSM7]).  Further, Defendants falsely registered the Property as a historical gravesite on multiple websites.  (*Id.* ¶¶ 112–17.)

Second, Defendants also allegedly interfered with Town politics in order to delay the development of the Property, including: (1) in 2009, urging the Town of Fishkill to adopt language in a "Comprehensive Plan" dedicating the Town to try to preserve "undeveloped" lands, particularly "gravesites of former soldiers," and later using the Comprehensive Plan to "legitimize their . . . efforts to block Continental Commons," (*id.* ¶¶ 82–84, 204); (2) supporting various candidates for Town Supervisor that purportedly also opposed the development, (*id.* ¶¶ 205–09); (3) having FOFSD supporters attend televised Town Planning Board meetings and reading letters into the record, (*id.* ¶¶ 104–05, 134–37); (4) proposing Town laws to "officially designate the Property as a Revolutionary cemetery," (*id.* ¶¶ 127, 129); and (5) lobbying against Plaintiffs connecting the Property to the town water and sewer system, (*id.* ¶¶ 212–13).

Third, Plaintiffs allege that Defendants physically tampered with the Property, including digging fake grave shafts in 2008, 2009, and 2010, (*id.* ¶ 146), hosting false "clean up" events adjacent to the Property to "trick volunteers to unknowingly trespass onto the Property to assist with the manipulation of the Property," (*id.* ¶ 147), planting human bones in a shallow trench on the Property, (*id.* ¶¶ 155–160), "seed[ing] the Property with buttons and threads of Continental Army uniforms," (*id.* ¶ 162), and "seed[ing] the burial trench with an eighteen century shoe buckle," which Defendants later claimed to have discovered, (*id.* ¶¶ 76, 140).

Fourth, Defendants also allegedly used the "mail services and interstate wire services" in furtherance of their scheme, including engaging in a mass ghost letter campaign, (*id.* ¶¶ 214–16), as well as various fundraising campaigns, (*id.* ¶¶ 199–203).  Further, on the basis of their

allegedly false claim about the Property's status as a Revolutionary War cemetery, Defendants

solicited and received private donations, (*id.* ¶¶ 185–89, 193), and applied for and received

various federal, state and local grants, (*id.* ¶¶ 182–84, 191–94). Defendants also attempted to

"defraud" taxpayers by "misrepresent[ing] archaeological evidence when completing

applications to the National Parks Service and the New York State Economic Development

Council," (*id.* ¶ 197), and continued to fundraise on their "false claim" that FOFSD was raising

money to purchase the Property, despite Plaintiffs now stating they would never sell it to them,

(*id.* ¶ 198).

Finally, Defendants attempted to interfere with Broccoli's livelihood, including launching

a "Stop IHOP" campaign—including making allegedly false statements to the media as well as

staging a picket and protest of a nearby IHOP in 2016—"in hopes that [IHOP] would act against

Plaintiffs." (*Id.* ¶¶ 218–25.) As a result of the delay caused by the scheme, IHOP rescinded its

offers to open an IHOP franchise at the Property, and other businesses (specifically, hotel chains)

declined to enter into agreements with Broccoli. (*Id.* ¶¶ 228–35.)

### 4. Plaintiffs' Investigation and Subsequent Lawsuit

Plaintiffs also allege that they hired a private investigator "to investigate Defendants'

conduct." (*Id.* ¶ 56.)[7] That investigator obtained an audio recording of a "Mr. Byster," who

referenced burying bones on the Property. (*Id.* ¶ 57.) In November 2017, Plaintiffs filed a state

lawsuit against Mr. Byster based on the statements in the recording, later adding Sandy as a

defendant. (*Id.*; *GLD3, LLC v. Byster, et al.*, No. 2017-52953, N.Y. Sup. Ct., Dutchess Cnty.

(filed Nov. 16, 2017).) Through the course of discovery in that litigation, including to non-

---

[7] Plaintiffs do not include the date they hired the investigator in the FAC. (*See* FAC
¶ 56.)

parties Ashworth and Farrell, Plaintiffs received a document production (the "2018 Document Production"). (*Id.* ¶ 58.) Upon review of that Production, Plaintiffs learned many of the facts alleged above and discovered the full extent of Defendants' alleged scheme. (*See, e.g.*, *id.* ¶¶ 53, 56, 62–64, 66–68, 94, 101, 143–47, 151, 159–60, 215; *see also* FAC Ex. A.)

    B.  Procedural History

Because the procedural background of this Action has been summarized in this Court's previous Opinion & Order on the Motions to Dismiss the Second Amended Complaint (the "2023 Opinion" (Dkt. No. 78)),[8] as well as the Court's 2024 Opinion, the Court supplements only with the procedural history of this case since the issuance of the 2024 Opinion.

On March 20, 2024, this Court issued its Opinion and Order regarding both Motions to Dismiss Plaintiffs' TAC. *See Broccoli*, 2024 WL 1199549, at *1. The Court granted the Motions to Dismiss the TAC in their entirety but allowed Plaintiffs an opportunity to amend their Complaint. *Id.* at *7.

Plaintiffs timely filed their FAC on April 19, 2024. (*See* FAC). Thereafter, Defendants filed pre-motion letters regarding their putative Motion to Dismiss the FAC, (*see* Dkt. No. 122), to which Plaintiffs responded, (*see* Dkt. No. 123). After a pre-motion conference, (*see* Dkt. (minute entry dated May 14, 2024)), the Court set a briefing schedule, (*see* Dkt. No. 125). On June 20, 2024, Defendants filed their Motion. (*See* Not of Mot.; Defs' Mem.) Plaintiffs filed their Opposition on July 12, 2024. (*See* Pls' Opp'n to Mot. to Dismiss FAC ("Pls' Opp'n") (Dkt. No. 130).) Two weeks later, Defendants replied. (*See* Reply in Supp. of Mot. to Dismiss FAC ("Reply") (Dkt. No. 131).)

---

[8] This Opinion was published as *Broccoli v. Ashworth ("Broccoli I")*, No. 21-CV-6931, 2023 WL 2664770 (S.D.N.Y. Mar. 28, 2023).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at

678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Moreover, "[a] complaint may be dismissed as untimely when the plaintiff's allegations themselves demonstrate that relief is barred by the applicable statute of limitations." *Figueroa v. Ponce De Leon Fed. Bank*, No. 11-CV-7633, 2012 WL 3264552, at *1 (S.D.N.Y. Aug. 10, 2012) (citing *Jones v. Bock*, 549 U.S. 199, 214–15 (2007)); *see also Nachman v. Tesla, Inc.*, No. 22-CV-5976, 2023 WL 6385772, at *3 (E.D.N.Y. Sept. 30, 2023) ("Though the statute of limitations is an affirmative defense, a complaint may be dismissed for failure to state a claim if the allegations in the complaint show that relief is barred by the applicable statute of limitations." (internal quotation marks and citation omitted)). Moreover, "[w]here the facts needed for determination of when a reasonable [person] of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers integral to the complaint, resolution of the issue on a motion to dismiss is appropriate." *Graham v. HSBC Mortg. Corp.*, No. 18-CV-4196, 2019 WL 3066399, at *4 (S.D.N.Y. July 12, 2019) (quoting *GVA Mkt. Neutral Master Ltd. v. Veras Cap. Partners Offshore Fund, Ltd.*, 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008)); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998) (noting that the Second Circuit "[has] held that the question of inquiry notice need not be left to a finder of fact").

Finally, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's*

*Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6)

motion, a district court must confine its consideration to facts stated on the face of the complaint,

in documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d

99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v.

Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

    B.  Analysis

In the FAC, as in the TAC, Plaintiffs allege that the Defendants violated, and conspired to

violate, RICO, in violation of 18 U.S.C. §§ 1962(c) and 1962(d).  (FAC ¶¶ 236–60.)  Defendants

move for dismissal of the FAC in its entirety, arguing that: (1) Plaintiffs' claims are barred by the

statute of limitations, (Defs' Mem. 14–20); (2) Plaintiffs fail to allege the required distinctness to

make out a RICO claim, (*id.* at 10–12); and (3) Plaintiffs fail to allege the required elements for

mail and wire fraud, (*id.* at 12, 21–25).  The Court addresses Defendants' argument only to the

extent necessary to decide the instant Motion.

    1.  Statute of Limitations

Defendants argue that Plaintiffs' RICO claims are barred by the statute of limitations.

(*See* Defs' Mem. 19; Reply 8–9.)  The Court agrees.

"The statute of limitations for a civil RICO claim is four years."  *Cohen v. S.A.C. Trading

Corp.*, 711 F.3d 353, 361 (2d Cir. 2013); *see also Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096,

1101 (2d Cir. 1988) (same).  "The limitations period begins to run when the plaintiff discovers or

should have discovered the RICO injury."  *Merrill Lynch*, 154 F.3d at 58; *Behrens v. JPMorgan

Chase Bank N.A.*, No. 16-CV-5508, 2019 WL 1437019, at *4 (S.D.N.Y. Mar. 31, 2019) (noting

that "discovery of the injury, not discovery of the other elements of a claim, is what starts the

clock" (quoting *Koch*, 699 F.3d at 148–49)). "Thus, the four-year statute of limitations is activated when [a] plaintiff is placed on 'inquiry notice' of the injury—that is, when [a] plaintiff has encountered 'sufficient "storm warnings" to trigger a duty to inquire.'" *Verschleiser v. Frydman*, No. 22-CV-7909, 2023 WL 5835031, at *5 (S.D.N.Y. Sept. 7, 2023) (alteration adopted) (quoting *Koch*, 699 F.3d at 153); *see also McKenzie v. Artists Rts. Soc'y, Inc.*, --- F. Supp. 3d ----, 2024 WL 4803870, at *9 (S.D.N.Y. Nov. 15, 2024) ("[O]nce there are sufficient 'storm warnings' to trigger the duty to inquire, the statute of limitations begins to run." (internal quotation marks omitted)). "'In such a case, knowledge of facts that would suggest to a reasonably intelligent person the probability that the person has been injured is dispositive,' even where the extent of the RICO scheme is not discovered until a later date." *McKenzie*, 2024 WL 4803870, at *9 (citing *Koch*, 699 F.3d at 153); *see also Fire & Police Pension Ass'n of Colo. v. Bank of Montreal*, 368 F. Supp. 3d 681, 708 (S.D.N.Y. 2019) (alteration adopted) ("Such storm warnings need not detail every aspect of the alleged fraudulent scheme.  Rather, such storm warnings are sufficient where, a person of ordinary intelligence would consider it probable that fraud had occurred." (quoting *Koch*, 699 F.3d at 151)); *In re Merrill, Bofa, & Morgan Stanley Spoofing Litig.*, No. 19-CV-6002, 2021 WL 827190, at *6 (S.D.N.Y. Mar. 4, 2021) ("Inquiry notice gives rise to a duty of inquiry when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded." (alteration adopted) (internal quotation marks and citation omitted)), *aff'd sub nom. Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71 (2d Cir. 2022).  "An objective standard applies to inquiry notice, and the Court may determine whether plaintiffs were on notice as a matter of law." *In re London Silver Fixing, Ltd., Antitrust Litig.*, 332 F. Supp. 3d 885, 913 (S.D.N.Y. 2018).  Moreover, "dismissal is appropriate when the facts from which knowledge may be imputed are clear from

the pleadings." *Schmidt v. Am. Package Co., Inc.*, No. 23-CV-5821, 2024 WL 85073, at *5 (E.D.N.Y. Jan. 8, 2024) (internal quotation marks omitted).

Further, the Second Circuit has adopted a "separate accrual rule," under which a "new claim accrues and the four-year limitation period begins anew each time a plaintiff discovers or should have discovered a new and independent injury." *Merrill Lynch*, 154 F.3d at 59 (internal quotation marks omitted); *see also Simmons v. Reich*, No. 19-CV-3316, 2020 WL 7024345, at *9 (E.D.N.Y. Nov. 30, 2020) (same), *aff'd*, No. 20-4114, 2021 WL 5023354 (2d Cir. Oct. 29, 2021). However, "allegations of 'new and independent' injuries cannot depend on injuries that are derivative of the core injury sustained." *Tech. Opportunity Grp., Ltd. v. BCN Telecom, Inc.*, No. 16-CV-9576, 2019 WL 4688628, at *6 (S.D.N.Y. Sept. 25, 2019) (quoting *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 524 (S.D.N.Y. 2007)); *see also Moss v. First Premier Bank*, No. 13-CV-5438, 2024 WL 4274780, at *5 (E.D.N.Y. Aug. 2, 2024) ("Put differently, when one injury is causally connected to a prior injury, the subsequent injury is not independent of the initial injury and does not trigger the separate accrual doctrine.").

Here, Plaintiffs allege that Defendants engaged in a multi-year fraudulent scheme to "stop[] or delay[] Plaintiffs' commercial development," (FAC ¶ 1)—as Plaintiffs term it, the "Delay Injury," (*see* Pls' Opp'n 12). Because Plaintiffs filed their initial Complaint regarding Defendants' alleged scheme on August 17, 2021, (*see* Dkt. No. 1), any injuries that occurred prior to August 17, 2017, are barred by RICO's four-year statute of limitations if Plaintiffs knew or should have known about such injuries, *Cohen*, 711 F.3d at 361; *Merrill Lynch*, 154 F.3d at 58–59. Plaintiffs assert that—despite alleging the Defendants engaged in acts in furtherance of the scheme dating back to at least 2008, (FAC ¶ 146)—Defendants' scheme "did not come to

light until the 2018 Document Production" and thus, Plaintiffs were not on notice of the Delay

Injury until that time, (*see* Pls' Opp'n 13). The Court is unpersuaded.

As the Court noted in its 2024 Opinion, Plaintiffs' "discovery of the injury, not the

discovery of the other elements of [their] claim, is what starts the [statute of limitations] clock."

*Behrens*, 2019 WL 1437019, at *4 (internal quotation marks and citation omitted). Further,

Plaintiffs did not have to be aware of all aspects of the alleged scheme in order to have inquiry

notice of the injury, *Verschleiser*, 2023 WL 5835031, at *5, as warnings that a fraud has *likely*

occurred are sufficient to put Plaintiffs on notice, *see Fire & Police Pension Ass'n*, 368 F. Supp.

3d at 708. And the FAC, like the TAC, reveals on its face that Plaintiffs received "storm

warnings" sufficient to put them on notice of their alleged RICO injury before 2017. *Koch*, 699

F.3d at 153 (internal quotation marks omitted).

Regarding Defendants' allegedly fraudulent acts in furtherance of the delay and

obstruction of Plaintiffs' construction project, Plaintiffs were plainly on notice of such conduct

prior to August 2017. The allegations in the FAC make clear that, as early as 2012, Plaintiffs

were aware that multiple archeological investigations had revealed the potential presence of

unmarked graves on the Property. (*Id.* ¶¶ 149–50). Plaintiffs also allege that over the next few

years, Defendants made false statements to various public sources that the "burials were

reexamined to date them to the Revolution," that "additional graves were identified on the . . .

[P]roperty using GPR," and that the "Property was never studied in earnest." (*See* FAC Ex. A at

9 (2012 statement by Ashworth in the Southern Dutchess News); *id.* at 8 (statement by Sandy in

book published in 2014); *id.* at 6 (2016 statement by Ashworth in the Poughkeepsie Journal).)

The FAC further alleges that, on March 16, 2013, the FOFSD, including Ashworth, publicly

stated they believed the graves on the Property were those of Revolutionary War soldiers and

warned that the Property was "in danger of commercial development," (*id.* ¶ 102; 2013 Press Release 1), and that in May 2013, human bones were discovered on the Property under circumstances that suggested they were planted there, (*see id.* ¶¶ 155–60). That same year, FOFSD contacted Plaintiffs about purchasing the Property and, when Plaintiffs denied their request, the FOFSD allegedly launched their illegal scheme. (*Id.* ¶¶ 75, 79–80.)

While these allegations, on their own, are insufficient to Plaintiffs on notice of the purported Delay Injury, Plaintiffs' allegations regarding their *own* activities leaves no doubt that they had received sufficient "storm warnings" that they knew, or should have known, of that injury. Most tellingly, at some point prior to 2017, Plaintiffs were sufficiently concerned about Defendants' interest in and activities on the Property that Plaintiffs hired a private investigator "to investigate Defendants' conduct." (*Id.* ¶ 56.)[9] This investigator provided Plaintiffs with an audio recording allegedly capturing discussions about the property being tampered with— specifically, a recording of "a Mr. Byster referencing the bur[y]ing bones on Plaintiffs' Property." (*Id.* ¶ 57.) Further, Plaintiffs allege that, on February 8, 2017, Plaintiffs sent the

---

[9] In the FAC, Plaintiffs do not include the date they hired the investigator. (*See* FAC ¶ 56.) Although Plaintiffs concede in their Opposition that the investigator was hired in November of 2014, (*see* Pls' Opp'n 13), "the Court cannot rely on 'factual allegations contained in legal briefs or memoranda'" when deciding a Rule 12(b)(6) motion, *Erasmus v. Deutsche Bank Ams. Holding Corp.*, No. 15-CV-1398, 2015 WL 7736554, at *1 n.2 (S.D.N.Y. Nov. 30, 2015) (quoting *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000)). However, the 2017 complaint Plaintiffs filed against Mr. Byster and Sandy in state court—of which the Court may take judicial notice, *see* supra Section I.A, notes that the recording at issue was made by Plaintiffs' investigator on August 13, 2015, (*see GLD3, LLC v. Byster, et al.*, Dkt. No. 2 ¶¶ 35–41, No. 2017-52953, N.Y. Sup. Ct., Dutchess Cnty.). Although the Court may only note that the State complaint exists, and not consider it for the truth of the matters asserted therein, *Doe*, 2023 WL 6199735, at *2, because Plaintiffs allege that the recording at issue obtained *before* the filing of the State complaint in 2017, (*see* FAC ¶¶ 56–57), the Court may reasonably infer that Plaintiffs hired the investigator prior to 2017, *see Sapia v. Home Box Off., Inc.*, No. 18-CV-1317, 2018 WL 6985223, at *7 (S.D.N.Y. Dec. 17, 2018) (granting a motion to dismiss and noting that "[p]laintiffs' failure to specify the exact timeframe leaves the Court with no favorable inferences to draw, as the Court is not permitted to presume facts not pleaded").

Town of Fishkill a letter concerning the "many trespassing events and tampering" that had occurred on the Property.  (*Id.* ¶ 144.)  These allegations all but confirm that Plaintiffs were aware—by February 2017 at the very latest—of Defendants' alleged conduct.[10]

Plaintiffs, however, argue that these events only put them on notice of "trespass or property damage," and "Defendants' motivations behind their vandalism and trespassing did not come to light until the 2018 Document Production."  (Pls' Opp'n 13.)  But Plaintiffs' claim that they did not grasp Defendants' motivations until 2018 is belied by the facts alleged in the FAC. In addition to the facts discussed above, which are themselves highly indicative of Defendants' motives, the FAC also contains allegations that, in 2016, the FOFSD launched a STOP IHOP campaign organized to prevent a "famous Revolutionary War site" from being "turned into an IHOP restaurant."  (FAC ¶¶ 121–22, 218–19; *see also* 2016 Petition (noting "developers want to turn the remaining supply land (burial site included) into an IHOP" and characterizing such conduct as "outrageous and insulting to our country's history"); *see id.* ("If you agree that preserving America's last great Revolutionary war site is more valuable . . . than another Rooty Tooty Fresh 'N Fruity breakfast franchise–then help us stop the bulldozers . . . .").)[11]  This campaign, which included a picket of a nearby IHOP, was allegedly "designed as a publicity stunt to put pressure on [IHOP] . . . in hopes that the corporation would act against Plaintiffs."

---

[10] Plaintiffs assert, somewhat defensively, that because they "hired the private investigator ***before*** [they] submitted their development plan to the Planning Board[], . . . Plaintiffs' investigation into Defendants' conduct is not, in and of itself, dispositive of Defendants' motion."  (Pls' Opp'n 13 (emphasis in original).)  But the analysis is not whether Plaintiffs were on notice before they submitted a formal development plan, it is whether they were on inquiry notice of their alleged injury before the expiration of the statute of limitations. *See Koch*, 699 F.3d at 153 (internal quotation marks omitted).  As discussed above, there is no doubt that they were or should have been.

[11] Plaintiffs omit from the FAC the date the petition was created, instead only noting the dates of the petition's most recent update.  (*See* FAC ¶ 123; FAC Ex. A at 5 (noting the petition was "last updated on 2020.10.30").)

(*Id.* ¶ 219 (internal quotation marks omitted).)  These allegations make it clear both that Defendants wanted to stop Plaintiffs from developing the Property and that Plaintiffs were aware (or should have been aware) of this fact.  Plaintiffs' argument to the contrary is thus a few pancakes short of a stack.

In sum, these allegations make clear that there were a plethora of storm warnings going back to early 2017 (or as far back as 2014) that Plaintiffs either knew or should have known about Defendants' alleged RICO scheme to stop or delay Plaintiffs' development of the Property. Thus, because the circumstances described above are plainly sufficient to demonstrate that Plaintiffs were on inquiry notice of their alleged RICO injuries, the four-year RICO statute of limitations began—at latest—by February 8, 2017.  Thus, Plaintiffs' time to bring their RICO claims expired by February 8, 2021, months before this litigation commenced.  *See Koch*, 699 F.3d at 153 (finding plaintiff's RICO claim time-barred where, more than four years prior to bringing suit, plaintiff was aware of numerous facts that "would suggest to a reasonably intelligent person" that the allegedly counterfeit product "was not authentic"); *McKenzie*, 2024 WL 4803870, at *10 (finding plaintiff's claims time barred and noting "[i]t is of no moment that [d]efendants' alleged fraud was not discovered until February 25, 2020, as the duty to inquire arose years earlier").

Moreover, Plaintiffs' contention that they suffered three distinct injuries, including two that occurred after 2017, is unavailing.  Plaintiffs argue that, in addition to the Delay Injury, they were injured by: (1) "the denial of Plaintiffs' petitions to extend water and sewer services to their property;" and (2) "the designation of the [P]roperty as a historical site."  (Pls' Opp'n 12.) However, the allegations in the FAC make clear that these injuries both relate to the same core RICO injury—i.e., the "stopping or delaying Plaintiffs' commercial development."  (FAC ¶ 1;

*see id.* ¶¶ 127–29 (alleging that, as part of the overall scheme, Defendants "conspired with other Doe Defendants to propose a Town law that would officially designate the Property as a Revolutionary cemetery" and noting the Town later "adopted the Resolution identifying the Property as historical"); *see id.* ¶¶ 132–37 (alleging, "during a public hearing regarding whether the Town Board should vote to appeal" the nullification of the denial of water and sewer services to the Property, that "Defendants submitted . . . letters to the Town Board . . . that followed the pattern of Defendants' fraudulent scheme," including "statements regarding the Property being the burial of identified Revolutionary War soldiers").)  Thus, Defendants' alleged conduct post 2017 is merely "derivative of the core injury sustained," and therefore, is not a "new and independent injury" capable of resetting the limitations period.  *Tech. Opportunity Grp., Ltd.*, 2019 WL 4688628, at *6 (internal quotation marks and citation omitted); *see also Merrill Lynch*, 154 F.3d at 59–60 (concluding that the defendants' "later communications which put a gloss on the losing investments were continuing efforts to conceal the initial fraud, and not separate and distinct fraudulent acts resulting in new and independent injuries"); *McKenzie*, 2024 WL 4803870, at *10 (finding that "if [p]laintiff were able to allege any cognizable harm under RICO, that harm would arise from [p]laintiff's *original* alleged injury in relation to [d]efendants' scheme to fraudulently sell licenses and conspiracy to profit from the same" and would not constitute a "separate and independent injur[y]" (internal quotation marks and citations omitted) (emphasis in original)); *Wang v. Yien-Koo King*, No. 18-CV-8948, 2019 WL 1763230, at *6 (S.D.N.Y. Apr. 22, 2019) (holding "[p]laintiffs cannot use independent, new predicate acts as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period" (alterations adopted) (internal quotation marks and citation omitted)); *Lorber v. Winston*, 962 F. Supp. 2d 419, 447–48 (E.D.N.Y. 2013) (holding the separate accrual rule did

not apply because the complaint alleged "one singular scheme . . . which was fraudulent at the outset" and the plaintiff's allegations of new and independent injuries "simply followed from the execution of that scheme").[12]

Accordingly, Plaintiffs' claims are time barred.[13]

2.  Fraudulent Concealment

Plaintiffs argue that even if their claims are time barred, they are entitled to equitable tolling because "Defendants concealed many of the alleged acts." (Pls' Opp'n 11, 14–15.) The Court disagrees.

---

[12] Moreover, even if the Court were to conclude that the alleged denial of water and sewer permits constituted a new and distinct injury, Plaintiffs have not plausibly alleged that *Defendants* caused said injury. At best, Plaintiffs have pled that Ashworth supported Albra as a candidate for Town Supervisor, (FAC ¶ 210), and that Albra later denied Plaintiffs these permits through a "successful lawsuit as a private citizen," (*id.* ¶ 212). But Albra is not a Defendant in this Action, and Plaintiffs have not persuasively pled that any of the named Defendants here caused him to bring such a lawsuit in his capacity as a private citizen. Indeed, Plaintiffs allege that the denial of water and sewer permits was *contrary* to FOFSD's own goals, as Ashworth and another FOFSD member "admit[ted] that they would want the [P]roperty connected to the municipal water and sewer supply if they owned the Property." (*Id.* ¶ 213; *see id.* ("While we at FOFSD oppose Continental Commons overall, we don't really oppose the water and arrangement that is being sought . . . .").) As such, even if this is conceivably a distinct injury, it appears to have been caused by individuals not named in this Action.

[13] Plaintiffs also argue that because there is "ambiguity about the dates of Plaintiffs' injuries" and when those injuries were or should have been discovered, the question of when the statute of limitations ran in this case is a "fact sensitive" one that cannot be decided on a motion to dismiss. (Pls' Opp'n 15.) The Court is unpersuaded. First, courts are encouraged "to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (citation omitted), *aff'd*, 113 F.3d 1229 (2d Cir. 1997); *see also Koch*, 699 F.3d at 151–54 (affirming dismissal of RICO claim as untimely); *McKenzie*, 2024 WL 4803870, at *10 (concluding that "[p]laintiff's argument that the statute of limitations is simply not an issue for disposition under Rule 12(b)(6) is unavailing" and dismissing the action (internal quotation marks oimitted)). Second, while there is some ambiguity in the FAC about the exact timeline of Defendants' scheme—primarily because Plaintiffs often do not include dates with their factual allegations—the facts as described above leave no doubt that Plaintiffs were on notice by early 2017 at the latest.

"The Second Circuit has held that the 'standard tolling exceptions apply' to civil RICO actions." *In re Merrill Lynch Ltd. P'ships Litig.*, 7 F. Supp. 2d 256, 274 (S.D.N.Y. 1997) (quoting *Bankers Tr.*, 859 F.2d at 1105), *aff'd*, 154 F.3d 56.

> Under the doctrine of fraudulent concealment, the statute of limitations will be tolled if the plaintiff proves three elements: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled.

*G.A.P. by Pungello v. United States*, No. 24-CV-152, 2024 WL 5047738, at *11 (S.D.N.Y. Dec. 9, 2024) (citation omitted); *see also Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 462 (S.D.N.Y. 2014) (noting that to prove fraudulent concealment, "[a] plaintiff must establish that 'the defendant wrongfully concealed material facts,' which 'prevented plaintiff's discovery of the nature of the claim'" (quoting *Koch*, 699 F.3d at 157)).  "The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000); *see also Mcpherson v. DeJoy*, No. 19-CV-7139, 2021 WL 4813164, at *5 (E.D.N.Y. Aug. 3, 2021) (same), *report and recommendation adopted*, 2021 WL 4260643 (E.D.N.Y. Sept. 20, 2021).  Moreover, fraudulent concealment "must be pleaded with particularity under Federal Rule of Civil Procedure 9(b)."  *See Behrens v. JPMorgan Chase Bank, N.A.*, No. 21-2603-CV, 2024 WL 1090856, at *2 (2d Cir. Mar. 13, 2024) (summary order); *see also Fire & Police Pension Ass'n*, 368 F. Supp. 3d at 703 ("A claim of fraudulent concealment must be pleaded with particularity, in accordance with the heightened pleading standards of Federal Rule of Civil Procedure 9(b).").

Here, even generously assuming Plaintiffs adequately pled that Defendants fraudulently concealed their conduct, thus preventing Plaintiffs from discovering the injury within the limitations period, Plaintiffs have not pled that they exercised due diligence in pursuing

discovery of the injury. Plaintiffs allege that they undertook "diligent efforts to investigate Defendants' conduct," but point only to their hiring of a private investigator and the subsequent filing of a lawsuit against Mr. Byster (and, eventually, Sandy). (FAC ¶¶ 56–57.) But that lawsuit was not filed until November 2017, (*GLD3, LLC v. Byster, et al.*, No. 2017-52953, N.Y. Sup. Ct., Dutchess Cnty.), and Plaintiffs do not allege that they took any actions in the interim between hiring the investigator and filing that lawsuit to discover or pursue their claims, nor offer any explanation for why they did not do so. Instead, they merely assert they are "entitled to have the statu[t]e of limitations equitably tolled." (FAC ¶ 70.) This conclusory allegation is plainly insufficient, especially given that a claim of fraudulent concealment requires particularized allegations. *See Behrens*, 2024 WL 1090856, at \*2; *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MDL-1775, 2010 WL 10947344, at \*18 (E.D.N.Y. Sept. 22, 2010) ("[G]eneral assertions of ignorance and due diligence without more specific explanation . . . will not satisfy the pleading requirements." (citing *Masters v. Wilhemina Model Agency, Inc.*, No. 02-CV-4911, 2003 WL 1990262, at \*2 (S.D.N.Y. Apr. 29, 2003))). Therefore, the Court concludes that Plaintiffs have failed to adequately plead tolling based on fraudulent concealment. *See Zirvi v. Flatley*, 433 F. Supp. 3d 448, 463 (S.D.N.Y.) ("The timeline of events undermines any argument that the plaintiffs acted with reasonable diligence in investigating the alleged wrongdoing, as a matter of law, and no amended complaint could cure such deficiencies."), *aff'd*, 838 F. App'x 582 (2d Cir. 2020); *see also Koch*, 699 F.3d at 157 (holding that the district court did not abuse its discretion in declining to equitably toll, on a fraudulent concealment theory, the statute of limitations, where, inter alia, plaintiff did not act with reasonable diligence to pursue discovery of his claims after he was put on notice of a potential fraud); *Zhongwei Zhou v. Wu*, No. 14-CV-1775, 2017 WL 1233994, at \*6 (S.D.N.Y. Mar. 31,

2017) ("In short, [p]laintiffs waited years before bringing this case.  The record reflects that they failed to exercise reasonable diligence in pursuing the facts and investigating their suspicions while their claims were still timely[.]").



Accordingly, because Plaintiffs fail to allege a RICO injury within the appropriate statute of limitations period, their RICO claims are time-barred, and therefore dismissed.[14]

### III. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is granted.  Plaintiffs' claims are dismissed with prejudice, as this is the second adjudication of Plaintiffs' claims on statute of limitations grounds.  *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *see also Bryant v. Capra*, No. 18-CV-10198, 2021 WL 323263, at *5 (S.D.N.Y. Feb. 1, 2021) (dismissing the plaintiff's claims with prejudice where it was "the second time adjudicating his claims, and [the p]laintiff ha[d] not fixed the problems identified by the Court in" a prior opinion); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting a motion to dismiss with prejudice where "[the p]laintiff ha[d] already had two bites at the apple, and they ha[d] proven fruitless" (alteration adopted) (citation omitted)).

---

[14]  As the Court noted in its 2024 Opinion, in finding that Plaintiffs' Section 1962(c) claim RICO claims are time-barred, and therefore dismissed, the Court is also dismissing Plaintiffs' Section 1962(d) RICO conspiracy claim, as "the statute of limitations for civil RICO conspiracy claims is four years" and "the statute of limitations analysis for civil RICO conspiracy claims is the same as that for civil RICO claims brought under the substantive RICO provision." (*See* 2024 Op. 15 n.4 (quoting *World Wrestling Ent., Inc.*, 530 F. Supp. 2d at 530).) Thus, the Court's statute of limitations analysis applies equally to Plaintiffs' 1962(d) claim, which is also dismissed.

The Clerk of Court is respectfully directed to terminate the pending Motion, (*see* Dkt. No. 128), and close the case.

SO ORDERED.

Dated:    March 21, 2025
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge